To THE PETITION OF COUNSEL FOR APPELLEES FOR A REHEARING AND THE PETITION OF COUNSEL FOR APPELLANT FOR A MODIFICATION 'of the mandate, Judge Lindsay delivered the following RESPONSE OP THE COURT:
Upon the motion for rehearing, appellees present an important question of practice to which the attention of this court was not called upon the hearing of the appeal. It appears that no guardian ad litem was appointed in the court below for the infant heirs of R. B. Bowler, deceased.
Section 55 of the Civil Code of Practice provides that “ no judgment can be rendered against an infant until after a defense by a guardian.” We are of opinion that this section applies as well to infants proceeded against upon constructive service as to those actually served with summons. Such being the case, it is evident that appellant was not entitled to judgment at the time the cause was submitted for hearing. It by no means follows, however, that a plaintiff who. has made out a good cause of action shall have his petition dismissed absolutely because he submits his cause for hearing before á guardian ad litem has been appointed, and has made defense for an infant defendant. The most rigid rule of practice that has ever prevailed in this state was in cases of defect of parties to dismiss without prejudice to a subsequent suit. But even under that rule the court had the discretionary power either to set aside the order of submission and allow the cause to be fully prepared, or to dismiss without prejudice.
In cases in which, for defect of parties or want of other proper preparation, the bill of the plaintiff has been absolutely dismissed, this court, when convinced that he had manifested *499 his right to relief, and that the dismission could be'sustained upon no other ground than this want of preparation, has not. hesitated to reverse. The general practice has been to remand the cause and leave the lower court free to exercise its discretion either to permit further preparation or to dismiss without prejudice. This rule' was modified in the case of Thompson v. Clay (1 J. J. Marshall, 413). In that case the court said, “We can not doubt therefore that as a general rule of practice it would be best, where a decree is reversed for being an absolute dismission for defect of parties, to leave the court and the parties in possession of the rights which they had before the erroneous decree was pronounced. . . . Cases may occur which would render a modification of this rule reasonable and just. Where the complainant has a clear, equitable right which it would be impossible or difficult or very inconvenient for him to assert successfully in a new suit, and where he has been guilty of no unreasonable negligence or delinquency in preparing his case, it might be proper to direct the inferior court to give him leave to make the necessary parties. And it would be peculiarly so if the court dismissed erroneously for some other cause than a defect of parties.” In that case, as in this, the court erred in dismissing on the merits, and did not notice the defective preparation, and the cause was remanded with instructions to allow the complainant to bring the proper parties before the court.
This decision was reviewed upon an able and exhaustive petition for a rehearing, and was adhered to. The rule thus established was subsequently recognized in the ease of Johnson’s heirs v. Fox’s heirs (5 J. J. Marshall), and has never since, so far as we can discover, been departed from by this court.
It is insisted by appellees that this case does not come within the rule; that although the petition may have been erroneously dismissed upon the merits, yet that appellant was *500 guilty of unreasonable negligence and delinquency, and omitted to make proper preparation, in order to obtain unjust advantages through the delay resulting therefrom. Appellees treat the failure of appellant to cause guardians ad litem to be appointed for the infant defendant as a failure to make them parties. Such is not the case. The infant heirs of Bowler were all made parties defendant , to the petition. They were summoned in the mode prescribed by section 88 of the Civil Code of Practice, and according to section 91, after the expiration of thirty days from the date of the warning orders, were in court as fully as parties not actually served with process can be brought.
Section 57 does not make it the imperative duty of the plaintiff to apply for the appointment of guardians ad litem for infant defendants. They may be appointed upon his application, and he can not proceed with his case to judgment until they are appointed and make defense. But the law makes it the duty of the coui’t to appoint the guardians, whether the plaintiff does or does not apply. We see no indication in this case of unreasonable negligence or delinquency. The pleadings were made up with reasonable dispatch, and the testimony upon which appellant relied to establish its right to relief was procured as fast as is usual in proceedings in equity. The failure to apply for the appointment of guardians ad litem can be more easily attributed to oversight or inadvertence than to perverseness or bad faith. There is no greater reason to conclude that appellant neglected to apply for the appointment of guardians for the infant defendants for the purpose of delay, in order that the debts of the company not embraced by the Fayette judgment might be barred by limitation, and to ascertain whether it would be profitable to claim the benefit of Bowler’s purchase, than thei'e is that appellees purposely refrained from presenting the failure to this court when the appeal was heard, intending to speculate upon its action, and holding back to be used, in case of a reversal of the judgment, *501 a fact they now insist renders necessary the recall of the court’s opinion. We are satisfied that in the court below, and also in this court, the want of guardians for the infant defendants was overlooked by the counsel on both sides, and that no inference can be drawn therefrom unfavorable to the good faith of either party. We have the best of reasons for supposing that the discovery was made for the first time after the judgment of the circuit court had been reversed.
If, as insisted, the adoption of the Civil Code of Practice had the effect of restoring the rule in force prior to the decision in the case of Thompson v. Clay, it would not affect this case, as there is here no defect of parties. It may be well, however, to observe that it has never been held that the old rule was restored; upon the contrary, in the case of Freeman v. Brenham (17 B. Mon. 603) the rule in the case of Thompson v. Clay was followed.
There is no case in which it has been held that the failure of the plaintiff to apply for the appointment of a guardian for an infant defendant, or the failure to take steps to compel the guardian when appointed to file his answer, was sufficient to authorize the dismission of his petition, with or without prejudice. It is the duty of the court to appoint the guardian for the infant defendant (Civil Code, sec. 56), and to compel him, if he accepts the appointment, to discharge his duties. (Greenup’s rpts. v. Bacon’s ex’rs, 1 Mon. 109.)
Section 400 of the Code prescribes the duty and power of the court in regard to the dismission of actions without prejudice. We do not find among the causes enumerated in said section for which an action may be dismissed without prejudice the neglect or failure of the plaintiff to have a guardian appointed for an infant defendant who has been regularly summoned, unless such neglect or failure is included in the fourth subsection, which provides that when there is a failure to prosecute some of the defendants with diligence the court *502 may on the. application of the other defendants dismiss the petition. But however this may be, it'may be safely assumed that when the application is based on the neglect of the court to discharge a duty imposed on it by express statute it will proceed to discharge that duty,, rather than to turn the plaintiff out of court.
. In the case of Henly v. Gore (4 Dana, 134) a guardian had been appointed, but had failed to answer, and this court, upon the appeal of the plaintiff, reversed the judgment, and held that, as the infants had been made parties, the failure of their guai’dian to answer and make defense was no sufficient reason for dismissing the bill without prejudice, and that it was the duty of the court to compel an answer, or to appoint some other person to defend, and to defer the hearing of the cause until after a proper answer had been filed. In this case no application was made by appellees to have the petition dismissed without prejudice, and hence it does not come within the provisions of subsection 4 of section 400 of the Civil Code, even if the failure to apply for the appointment of a guardian was want of proper diligence, a question we do not deem it necessary or proper here to decide. We conclude therefore that this court has the right, and that it is its duty, to remand the cause for proceedings consistent with the equities of the parties as they appear from the records before us.
This court has generally in cases of reversal, where there was a defect of parties in the lower court, refrained from passing upon the merits of the controversy. But the practice in this regard has not been uniform. In the case of Wilkinson v. Perrin (7 Mon. 216) it is said, “It would be rigid to deny relief against error to a plaintiff who had a meritorious claim, in which he has been defeated by the judgment or decree of the inferior court, barely because he had omitted to make a necessary party. In such case we reverse for error on the ñierits, and then leave them to touch the defect of parties, *503 and send the cause back that these parties may be made, passing the merits generally with much silence, because it would be useless to investigate them minutely, where either party is at liberty, by new pleadings or evidence, to change them materially before the cause came to another hearing.” It is to be remarked that this opinion, was written by Judge Mills, who, as amicus curiae, filed the petition for a rehearing in the case of Thompson v. Clay; and further, that in remanding the cause he did not leave it discretionary with the court below to dismiss without prejudice, or to allow further preparation, but directed that the plaintiffs should be permitted to amend their bills if they should elect to do so.
In most cases in which there is a reversal it is practically, impossible for this court to refrain from the discussion of the merits of the controversy, and especially is it so when the reversal is based upon the idea that the appellant has made out an apparent right to relief.
Where there is a defect of parties we confine ourselves as closely as possible to the cause of action as presented by the petition; but when the cause has been prepared for trial by the parties in court, a judgment can not well be reversed without an expression of opinion to the effect that, as the record then stands, the appellant has made out his cause of action.
In this case, if our attention had been called to the defective preparation, we could have followed the rule indicated in the case of Wilkinson v. Perrin, not so much because the merits could not properly be considered, as that Bowler’s heirs may hereafter answer and make further preparation, and thereby change materially the issues before the cause comes to another hearing.
This case differs essentially from those in which there is a defect of parties. The infants were properly before the court upon constructive service. There had been appointed for them a corresponding attorney, and the testimony is principally in *504 the shape of depositions taken upon notice to ■ said attorney. Appellant had the right to proceed at once to prepare its cause, and the depositions, taken upon notice to the corresponding attorney, can be read against the infant appellees, notwithstanding their want of a guardian ad litem. (Civil Code of Practice, secs. 617, 696, 440.) It is the same case with the exhibits on file. They will be competent evidence for or against the infants after they or their guardians, if they are still minors, shall appear and make defense. Such being the case, the depositions and exhibits can be considered on this appeal; and upon the facts as thus presented we. must either affirm a judgment that, in our opinion, is against the clearest principles of equity, or give our reasons for reversing it. The case of Henly v. Gore (4 Dana) resembles this case in its controlling features, and there the court did not hesitate to express its opinion upon the merits, although the infant appellees to be affected by the reversal were represented, if at all, by a guardian who had failed to answer and make defense.
In this case we act upon the precedent thus set with but little reluctance, as the reasons we feel ealled upon to give are founded upon evidence competent against all the parties in interest. Further than this, if Bowler’s heirs have a good defense, it is still within their power to make it, and the court below will be bound by our opinion only to the extent that it may apply when they shall have interposed such additional defenses, and made such additional preparation as they may desire. Hence we feel that there is no sufficient reason for withdrawing the opinion delivered on the 23d of April, 1873.
We proceed now to inquire whether said opinion ought in any particular to be modified. It is unnecessary to review the reasons which influenced us to determine that the company had the right to treat Bowler as holding under his purchase in trust for it. Being a fiduciary, he could not purchase the property of his constituent without its consent, or without the permis *505 sion of. the chancellor by whom the sale was decreed. He had no such consent or permission, and even if the order of confirmation can be tortured into a ratification by the chancellor of his purchase, it came too late to-, affect the rights of appellant.
He could not, if alive, nor can those who hold under him, claim to have been misled by the silence of-the company. He was notified within a reasonable time that his right to hold the property was denied, and that it was the intention of the company to treat him as holding for its benefit. He oould have relieved himself from the effect of this notice, and estopped the company afterward to claim against him, by offering to surrender upon being placed in statu quo. He not only failed to do this, but refused to confer with the committee appointed by the directory to ascertain the terms upon which he would surrender. Appellees therefore can not be- heard to say that their title has been confirmed by acquiescence. It does not matter that appellant, with full knowledge of all the facts, delayed suit for a considerable time after-it was in a situation to enforce its rights. Such delay may in some cases be cogent evidence of waiver- and abandonment, but it is not so in this case. Here the purchaser, with notice of the appellant’s claim, not only did not offer to surrender, but refused to entertain propositions looking to that end. We are aware of no principle of equity- that will allow a fiduciary, who has purchased trust-property in violation of the trust, to hold possession of it with notice that the eestui que trust disputes his claim, and' then insist that his title has been confirmed by the failure of the cestui que trust to-sue within what he: may regard, a reasonable time. The acquiescence that confirms a title obtained in the manner Bowler obtained title to the property in contest, is the lying by of a party, “and knowingly and deliberately!permitting another to deal with the property, or- to incur expense,, under the belief that the transaction had been recognized.” *506 (Kerr on Fraud, Am. ed., 229.) Where there is notice of non-recognition the doctrine of acquiescence has generally no application. Under the circumstances of this case the delay of appellant in commencing suit was not so unreasonable as to take from it the right to impeach the transactions through which appellees hold possession and claim title.
The judgment and sale of the road were the natural and necessary consequences of Bowler’s conduct when acting as a director. They disorganized the directory, and for a time paralyzed the company. It was left without means, and therefore unable, to commence litigation; and before sufficient time had elapsed to enable it to recover from the effects of Bowler’s bad faith the civil war broke out. The disorders incident to the war affected more or less the section of country in which the greater part of the stock was held, and necessarily prevented concert of action between the stockholders, and thereby increased the difficulties under which the company labored.
These difficulties were real and not mere imaginary impediments. The hinderance was actual, and was traceable to the bad faith of the party in possession. Such being the case, no delay short of the time fixed by the statute will bar appellant’s right of action. That the right of a party to enforce a constructive trust is not ordinarily lost until the statutory bar is complete has been frequently recognized. (Talbott v. Todd, 5 Dana, 199; Bohannon v. Sthreshly’s adm’rs, 2 B. Mon. 439; Manion’s adm’rs v. Titsworth, 18 B. Mon. 601; Lewin on Trusts and Trustees, 731, 732; Tiffany & Bullard on Trusts, 717; Hill on Trustees, 265.)
That Bowler’s vendees had notice of the claim of the appellant at the time they purchased admits of but little doubt. The record of the Fayette suit, through which he claimed title, was notice to them of the attitude he occupied toward the company when he purchased, and of the fact that certain of the stockholders denied his right to purchase. Wil *507 liam TT. Gedge was a director for the company at the time of the judgment and sale, and bid in the road for .Bowler’s benefit. James C. Gedge became one of his sureties when Bowler executed bonds to the commissioners who made the sale. Ernst was a member of the committee of second-mortgage bondholders which attempted to make terms with the company before Winslow’s suit was instituted. He bid for the road at the decretal sale, and was president of the city council of Covington while the propriety of suing Bowler to recover the road was being considered by that body. Stowers was elected a director of the company after the sale, and was in office when the company was attempting to negotiate with Bowler relative to the surrender of the road. Hathaway and Keith were bondholders, and were parties to Winslow’s suit. It would be a most extraordinary circumstance, considering the publicity of the controversy between the company and Bowler, that parties who had been thus intimately connected with the transactions attending his purchase should be ignorant of appellant’s claim. The exaction by the vendees of the extraordinary covenant of warranty contained in the deed to Ernst and Keith, the conditions of which are set out in detail, and in which the possibility of the loss of the property by some “ claim in law or in equity ” other than the bonded debt they had contracted to pay is distinctly recognized, is a circumstance from which an inference of notice may be legitimately drawn. And when we consider that the vendees knew that no other party than’the company could in any contingency question their title this inference may be allowed its proper weight without the slightest danger of establishing a rule that may militate against persons who have taken covenants of warranty claiming to be innocent purchasers.
We are satisfied as to the jurisdiction of the Kenton Circuit Court. There is no reason whatever requiring the action to be instituted in Eayette county. This is not a proceeding to *508 set aside, vacate, or modify the judgment or any order in the Winslow suit. The question to be determined is whether Bowler’s heirs and vendees hold for themselves or as trustees for appellant. Similar questions were involved in the cases of Martin v. Martin (16 B. Mon. 8), Miller’s heirs v. Antle (2 Bush, 408), and Green v. Ball (4 Bush, 586). In each of these cases the purchaser at a decretal sale whose purchase had been confirmed was adjudged to hold in trust for the defendant in the judgment under which the sale was made and the trust was enforced, without the slightest idea upon the part of the court that it was thereby vacating or in any degree modifying or affecting the judgment in the original action.
Bowler’s heirs, who are non-residents, can be proceeded against by orders of warning. They hold in part the equitable title to property situate within this state. Appellant claims that it has the right to be invested with this equitable title. It can not bring these parties into court by actual service of summons. If they can not be summoned under the provisions of section 88 of the Civil Code, it results that the courts of this state have not the power to settle conflicting claims to property within their local jurisdiction where one or more of the claimants reside out of the state and fail or refuse to make themselves parties to actions instituted for such purpose. There is no such defect in our system of procedure.
The mandate filed June 2, 1873, is modified as follows:
If upon the return of the cause, and after Bowler’s heirs shall have been allowed to make defense, appellant shall still manifest its right to relief, then in addition to the credits allowed appellees by said mandate they will be credited by all sums of money they may have paid out in the way of taxation, federal, state, and municipal; • also by all sums actually paid for loss of freights and injuries to persons and property (unless such losses or injuries were caused by their fraud or gross neglect), and also for costs and reasonable *509 attorneys’ fees actually paid out in the defense of such cases, and on all sums so paid interest will be allowed from the date of payment. If upon the settlements of the accounts between the parties litigant as prescribed by the original mandate and this modification a balance shall be found in favor of appellant, such balance will be applied to the satisfaction of that portion of Bowler’s judgment in the Fayette Circuit Court not provided for by the terms of the first purchase. If the balance exceeds the amount of such portion of said judgment, then judgment will be rendered against appellees for the excess. In satisfying Bowler’s Fayette judgment his unpaid income bonds, with accumulated interest, will first be satisfied. Then the coupons due and unpaid on the third-mortgage bonds held by him will be paid; and if a balance still remains appellees will have the right to demand the immediate satisfaction of so many of the third-mortgage bonds as will be equal in amount to such balance.
If any amount remains unpaid on Bowler’s judgment after making the deductions specified, appellees will hold that balance as other unpaid creditors hold their claims. Their right to demand a resale of the road in satisfaction thereof can not be determined in this proceeding.
While it would be a partial confirmation of Bowler’s claim to compel appellants to satisfy his judgment in full, regardless of the state of accounts between it and appellees, before being allowed to demand possession of its road (subject to the conditions of Winslow’s judgment), it would be inequitable to require the latter parties not only to surrender the road, but to pay to their debtor a sum of money that in good conscience ought to be applied to the satisfaction of the lien they hold upon the property to be taken from their possession and control. It is too late now to inquire into the right of Bowler while director for the company to buy up its securities at less than their face value. The judgment in Winslow’s suit establishes *510 his right to have his securities paid in full. The court rendering the judgment had jurisdiction of the parties and of the subject-matter of the suit. Its judgment remains in full force and effect, and can neither be vacated, modified, nor disregarded by the Kenton Circuit Court.
The modifications of the mandate asked by appellant are refused, as is also the rehearing asked by appellees.